IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:16-CV-333-FL

| | |
|---|---|
| RICHARD ATKINSON, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-14, DE-16] pursuant to Fed. R. Civ. P. 12(c). Claimant Richard Atkinson ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the matter be remanded to the Commissioner for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on August 23, 2012, alleging disability beginning September 1, 2009, later amended to December 1, 2010. (R. 37–38, 174–77). The claim was denied initially and upon reconsideration. (R. 85–118). A hearing before the ALJ was held on February 4, 2015, at which Claimant, represented by counsel, and a

vocational expert ("VE") appeared and testified. (R. 33–84). On March 13, 2015, the ALJ issued a decision denying Claimant's request for benefits. (R. 7–31). On August 9, 2016, the Appeals Council denied Claimant's request for review. (R. 1–5). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity from the alleged onset date through the date last insured of March 31, 2013. (R. 12).

3

Next, the ALJ determined Claimant had the severe impairments of degenerative disc disease, degenerative joint disease/arthritis, post-traumatic stress disorder ("PTSD"), depression, hypertension, gout, gastroesophageal reflux disease ("GERD"), and status-post left middle finger amputation and right fingertip amputation, and the non-severe impairments of erectile dysfunction, meibomian, hyperlipidemia, obesity, anemia, and substance abuse. (R. 12–13). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13–16). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restrictions in activities of daily living, and moderate difficulties in social functioning and concentration, persistence, or pace, with no episodes of decompensation. (R. 14–15). Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding Claimant has the ability to perform a range of light work[1] with the following restrictions:

> no more than occasional climbing of ramps, stairs, ladders, ropes, and/or scaffolds, balancing, stooping, kneeling, crouching, and/or crawling. He is limited to frequent handling and fingering bilaterally. He must avoid concentrated exposure to workplace hazards, such as dangerous moving machinery and unprotected heights. He is capable of understanding and performing simple, routine, repetitive tasks, and maintaining concentration, persistence, and pace to remain on task for periods of 2 hours at a time throughout a typical 8-hour workday in order to perform such tasks, in a low stress work setting, which is further defined to mean no production-pace or quota-based work, rather a goal-oriented job primarily dealing with things as opposed to people.

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

(R. 16–22). In making this assessment, the ALJ found Claimant's statements about his limitations not entirely persuasive of disability. (R. 17). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work. (R. 22). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 22–23).

Claimant alleges the ALJ's RFC determination overstated Claimant's abilities as a result of the ALJ's (1) failure to appropriately weigh the opinion evidence, (2) failure to appropriately evaluate Claimant's credibility, and (3) failure to appropriately consider his Department of Veterans Affairs ("VA") disability rating. Pl.'s Mem. [DE-15] at 10–15.

## V. DISCUSSION

### A. The ALJ's RFC Determination

Claimant contends the ALJ erred in finding he has the RFC to perform a reduced range of light work and, as a result, misapplied the Medical Vocational Guidelines. Pl.'s Mem. [DE-15] at 10–15. Specifically, Claimant argues that the ALJ improperly evaluated the opinion evidence, his credibility, and his VA disability rating. *Id.* The Commissioner counters that the ALJ properly evaluated this evidence and the decision is supported by substantial evidence. Def.'s Mem. [DE-17] at 10–18.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a

5

function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted).

### 1. The VA Disability Rating

Claimant contends the ALJ erred in failing to accord substantial weight to his 90% VA disability rating without demonstrating a deviation was appropriate in violation of *Bird v. v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337 (4th Cir. 2012). Pl.'s Mem. [DE-15] at 13–14. The record includes an August 26, 2011 rating decision assessing an increased rating from 20% to 40% for gout (effective March 15, 2010), an increased rating from 10% to 20% for meibomian gland dysfunction (effective May 2, 2011), and a continued rating of 10% for lumbosacral strain, for an overall combined rating of 70% (R. 300–11); an August 21, 2012 decision assessing an increased rating from 10% to 40% for lumbosacral strain (R. 312–13); an October 21, 2013 rating decision assessing a 50% disability rating for delayed onset PTSD as of November 8, 2012 (R. 289–91); and an October 17, 2014 letter indicating the amount of Claimant's VA benefit and that he has a combined rating of 90% (R. 1299).

In *Bird*, the Fourth Circuit noted that "both the VA and Social Security programs serve the

same governmental purpose of providing benefits to persons unable to work because of a serious disability." 699 F.3d at 343 (citation omitted). "Thus, . . . in making a disability determination, the SSA must give substantial weight to a VA disability rating" unless the record clearly demonstrates that a lesser weight is appropriate. *Id.* ("[B]ecause the SSA employs its own standards for evaluating a claimant's alleged disability . . . an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate."). The ALJ expressly acknowledged the Fourth Circuit's holding in *Bird*, but found that deviation was appropriate and gave "little weight" to the disability rating and permanent disability findings because

> the overall medical and vocational evidence used to reach the findings herein clearly exceeds the scope of the claimant's VA ratings, and the Social Security Rules and Regulations require an entirely different analysis than VA ratings. Moreover, VA rating percentages do not correlate to work-related limitations assessed over a longitudinal period. For instance, the VA rated the claimant's PTSD at 50%, even noting a GAF score of 58, which is moderate, as the basis for it (Ex. 16E). Certainly, a moderate rating does not correlate to finding of disability. In addition, he carries a 40% rating for rheumatoid arthritis, which he was not diagnosed with during the period in question, though the record supports gout.

(R. 21). The ALJ's explanation for deviation from the "substantial weight" presumption is insufficient.

The ALJ first pointed out that there are differences between the VA and Social Security disability evaluation analyses. *Id.* Yet, simply noting the fact that the VA and SSA employ different standards, in and of itself, is insufficient to justify deviation under *Bird*. *See Nguyen v. Colvin*, No. 5:14-CV-227-D, 2015 WL 5062241, at *7 (E.D.N.C. Aug. 10, 2015) ("[T]he reasons cited by the Commissioner—different rules and different standards—would apply to every case and thus cannot be relied upon to avoid scrutiny of the [agency's] decision under *Bird's* new presumptive standard."), *adopted by* 2015 WL 5089060 (Aug. 27, 2015).

7

The ALJ next explained that "VA rating percentages do not correlate to work-related limitations assessed over a longitudinal period," provided as an example that "the VA rated the claimant's PTSD at 50%, even noting a GAF score of 58, which is moderate, as the basis for it (Ex. 16E)," and concluded that "[c]ertainly, a moderate rating does not correlate to finding of disability." (R. 21). While the ALJ correctly notes that a GAF score of 58 was listed as evidence considered, the VA decision cites a variety of other evidence in support for its decision, undermining the ALJ's reasoning that the VA decision did not correlate to limitations assessed over a longitudinal period. For example, the decision indicates the records considered included private treatment records from Robeson Family Counseling Center and VA treatment records from December 1, 2011 to May 15, 2013. (R. 289–90). The VA decision also stated it was based on, among other things, findings of disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, chronic sleep impairment, and anxiety. (R. 290). Furthermore, consideration of a GAF score does not mean the overall determination is not longitudinal, as evidenced by the ALJ's consideration of Claimant's GAF scores. (R. 19–21).

Finally, the ALJ notes that Claimant "carries a 40% rating for rheumatoid arthritis, which he was not diagnosed with during the period in question, though the record supports gout." (R. 21). However, the ALJ found "degenerative joint disease/arthritis" to be a severe impairment at step two. (R. 12). Further, the reference to the 40% rating for rheumatoid arthritis comes from a January 2014 VA progress note listing Claimant's rated disabilities. (R. 1261). Notably, this list does not include Claimant's 40% rating for gout, which the ALJ appears to recognize, and the ALJ wholly fails to address Claimant's 40% rating for his back impairment. While the Commissioner points to evidence in the record that she asserts undermines the VA's conclusions, Def.'s Mem. [DE-17] at 15–16, it

8

is the duty of the ALJ to conduct this analysis in the first instance, and the court cannot conduct a meaningful review of analysis not present in the ALJ's decision. *See Bowen v. Berryhill*, No. 5:16-CV-65-FL, 2017 WL 1194462, at *4 (E.D.N.C. Mar. 31, 2017) ("[C]ourts may not accept appellate counsel's post hoc rationalizations for agency action," and "[i]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.") (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)). Accordingly, the reasons provided by the ALJ are insufficient to justify deviation from the substantial-weight presumption, and it is recommended that on remand the ALJ more fully explain, consistent with *Bird*, his rationale as to why lesser weight is warranted.

### 2. The Opinion Evidence

Claimant contends the ALJ erred in assigning too much weight to the opinion of Dr. Link, a one-time consultative examining psychologist, because he did not have a treatment relationship with Claimant. Pl.'s Mem. [DE-15] at 14–15. When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* § 404.1527(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" it is given controlling weight. *Id.* However, "[i]f

9

a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The weight afforded such opinions must be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996).[2] An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted).

Dr. Link performed a clinical psychological evaluation of Claimant on January 6, 2013. (R. 1057–61). The ALJ considered Dr. Link's opinion, which he accurately summarized as follows:

> [I]n January 2013, psychiatric consultant, William Link, Ph.D., examined the claimant (Ex. 26F). He noted the claimant presented in no emotional distress, he was polite and respectful, he could express himself in a linear fashion with tight associations, and there was no obsessions or delusions shown. Dr. Link indicated the claimant had adequate recent and remote memory, he could do serial 3s in 20 seconds, and the claimant had sufficient enough insight and judgment that he could

---

[2] Rulings 96-2p and 96-6p were rescinded, effective March 27, 2017, and therefore still apply to this claim. 82 Fed. Reg. 15263-01 & 15263-02 (Mar. 27, 2017).

respond appropriately to dangers in a simple work environment. He estimated the claimant's intelligence was in the average range. He determined overall that the claimant would he able to understand, retain, and carry out simple instructions. He did not believe the claimant would have trouble dealing with others, and wrote the primary reason the claimant would not be able to work was not psychological or cognitive in nature. Dr. Link noted he did not believe depression significantly reduced the claimant's capacity to engage in a work setting, and wrote the PTSD was not prominent in his everyday life. He also assessed a high GAF score of 65. Partial weight is given to Dr. Link's opinions overall, as they are generally consistent with the bulk of the objective evidence, but he only examined the claimant once, so his opinions are based on limited knowledge of and interaction with the claimant. Yet, his exam certainly undermines the intake exam.

(R. 19–20).

The ALJ only assigned "partial weight" to Dr. Link's opinion, because "he only examined the claimant once, so his opinions are based on limited knowledge of and interaction with the claimant." (R. 20). Thus, the ALJ appropriately considered the absence of a treatment relationship between Dr. Link and Claimant. 20 C.F.R. § 404.1527(c)(2). The ALJ also stated that Dr. Link's opinion was "generally consistent with the bulk of the objective evidence," and consistency is a relevant factor in evaluating opinion evidence. *Id.* § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Ultimately, however, despite Dr. Link's opinion that Claimant's PTSD was not "currently an issue with him," he would not "have trouble dealing with others around him," and "he could respond appropriately to dangers in a simple work environment" (R. 1060), the ALJ found Claimant's mental impairments more limiting and imposed restrictions in the RFC to avoid concentrated exposure to workplace hazards and to work in a low stress setting primarily dealing with things as opposed to people. (R. 16). Accordingly, the ALJ did not assign undue weight to Dr. Link's opinion.

11

### 3. Credibility

When assessing a claimant's RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593–94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996);[3] *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564–65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595–96. But neither is the ALJ

---

[3] Ruling 96-7p was superceded, effective March 28, 2016, and therefore still applies to this claim. 81 Fed. Reg. 15776-01 (Mar. 24, 2016).

12

required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *2; *see Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4–8 (E.D.N.C. Mar. 23, 2011) (concluding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (Apr. 26, 2011).

Claimant contends his credible testimony, supported by the record, demonstrates that he cannot work at any exertional level. Pl.'s Mem. [DE-21] at 11. Specifically, Claimant notes the following testimony: "he had to quit his last job, even though it was part-time, because he could not handle the standing due to back pain, which is not surgically correctable and has not been alleviated by physical therapy or injections" (R. 46, 57); "he suffers from gout in various places on his body, with the worst being in both big toes," "he is in so much pain during a flare that it hurts when the sheets touch his feet," and "he has had eight gout flares, occurring unpredictably and lasting five days to two weeks, in the last two years" (R. 47–48, 58, 61–62); "he has issues in both knees due to his left knee having to overcompensate for his right after surgery and [] he is no longer able to use his left hand like he used to prior to amputation, with noted difficulties in picking up objects, grasping, and reaching" (R. 48, 59–60); "he is constantly changing positions to get comfortable while sitting and can only remain in one position for 10–15 minutes at a time, and [] he can lift a maximum of 10 pounds due to back pain" (R. 49, 67); "he has a low frustration tolerance and difficulty focusing as a result of his PTSD" (R. 50–51); "even with multiple medications, his hypertension is still borderline and [] he suffers from headaches related to this impairment" (R. 51); "he continues to have pain in spite of taking Percocet four times a day, muscle relaxers twice a day, and ibuprofen

13

as needed for breakthrough pain, [] his pain interferes with his ability to sleep," and "he dozes off approximately eight times a day due to drowsiness that is a side effect of his pain medications" (R. 52–53, 55–56, 68). Pl.'s Mem. [DE-15] at 11–15. Claimant further contends that his symptoms are well documented in the medical records and physical therapy and injections have not relieved his back pain, which is not correctable through surgery. *Id.* at 12 (citing (R. 472, 557, 565, 581, 593, 600, 618, 637, 869, 956, 961, 1013, 1232, 1283, 1287, 1291, 1295, 1300, 1304, 1373, 1392, 1400, 1406)).

The ALJ discussed Claimant's testimony as follows:

> The claimant alleges he is unable to work due to the pain, weakness, and difficulty concentrating caused by his combined impairments. He contends he experiences constant back and bilateral leg pain every day. He testified he underwent right knee surgery in 2006, and since then, has had to put more pressure on his left knee. He said he experiences headaches due to elevated blood pressure. He has a history of getting the middle finger on his left hand cut off; he has difficulty picking up objects with his left hand. He also lost part of a finger on his right hand, but stated his right hand functioned "fine;" his right hand is dominant. The claimant also stated he has difficulty focusing because of his medication. He had received mental health therapy for depression and anxiety, which were helpful. His psychiatric medication was helpful. As for his daily activities, he stated he could do light household chores, such as vacuuming, doing dishes, and preparing simple meals, but he is limited due to pain. He still drives.

(R. 17). The ALJ found Claimant's testimony "not entirely persuasive of disability[.]" (R. 17).

The ALJ's decision does not adequately address Claimant's testimony regarding his limited ability to use his left hand. The ALJ found that Claimant was right hand dominant, and that Claimant's right hand function was admittedly "fine," but acknowledged Claimant's testimony that the middle finger on his left hand was amputated and he had difficulty picking up objects with his left hand. (R. 17, 59). The ALJ determined Claimant could perform frequent (cumulatively more than 1 /3 up to 2 /3 of an 8 hour day) *bilateral* handling (gross manipulation) and fingering (fine

14

manipulation). (R. 16). Ruling 85-15, related to nonexertional impairments, explains the significance of an impairment in the ability to perform fine manipulation.

> "Fingering" involves picking, pinching, or otherwise working primarily with the fingers. It is needed to perform most unskilled sedentary jobs and to perform certain skilled and semiskilled jobs at all levels of exertion. As a general rule, limitations of fine manual dexterity have greater adjudicative significance — in terms of relative number of jobs in which the function is required — as the person's exertional RFC decreases. Thus, loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work.

S.S.R. 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985).

The ALJ did not expressly state why he found not fully credible Claimant's testimony regarding the severity of his limitation in using his left hand. In considering the medical evidence, the ALJ discussed a December 2012 examination of Claimant's hands by his primary care physician showing no tenderness or swelling, but noting the presence of "obvious hand deformity to both hands—small distal fingertip amputations on the left 2nd, 4th, and right 2nd with the fingernails intact; amputation of the distal phalanx of the left 3rd with no fingernail," "limited left 4th digit extension, but good finger flexion in both hands," "only minor grip strength loss ( 4+/5) of both hands," and "his sensation was intact for both hands." (R. 18, 1090–93). Claimant testified that the use of his left hand was "very limited" and that he had difficulty reaching, grabbing (e.g., turning bolts), and picking up items. (R. 59–60). The findings in the December 2012 treatment note say little about Claimant's ability to perform fine manipulations with his left hand, and therefore an "accurate and logical bridge from the evidence to [the ALJ's] conclusion" is lacking. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

The ALJ also discussed a Functional Capacity Evaluation ("FCE") performed by an

occupational therapist in April 2012, concluding that Claimant had "no fine hand movement ability bilaterally." (R. 18, 974). The ALJ gave the opinion as a whole partial weight, explaining in relevant part that

> there is no evidence showing the claimant has no fine hand ability bilaterally; such a finding is not consistent with the overall evidence. In fact, as noted above, the claimant testified his right hand was "fine," and the objective findings are minimal, though he has been limited to frequent handling and fingering bilaterally.

(R. 18). Claimant's left middle finger was amputated, along with two fingertips, and it is unclear what further objective findings the ALJ required to bolster Claimant's testimony. The ALJ also failed to specifically cite any evidence contradicting Claimant's testimony regarding the use of his left hand. Claimant's hand deformity resulted from a crushing accident at work in 2001, which accounts for a lack of relevant medical records, and Claimant reported to his treating physician that has had "accepted this injury and doesn't think there is a way to get better." (R. 1042). To the extent the ALJ is suggesting the lack of further treatment evidence in the records demonstrates Claimant was not credible, it is not apparent that there was any further treatment from which Claimant would benefit.

The ALJ also noted the state agency reviewer's conclusion that Claimant could perform frequent bilateral handling and fingering. (R. 21, 96, 114). However, the ALJ only gave these opinions partial weight, due to evidence received at the hearing level and Claimant's testimony, which addressed his limited ability to use his left hand. (R. 21, 59–60). Claimant was forthright regarding his ability to use his right hand despite some deformity, and the ALJ did not sufficiently explain why he did not credit Claimant's testimony regarding his limited ability to use his left hand. *See Mascio*, 780 F.3d at 640 (finding the ALJ's lack of explanation as to why he decided which of

the claimant's statements to believe and which to discredit required remand).

Finally, the ALJ's failure to properly assess Claimant's credibility regarding the use of his left hand was harmful to Claimant, because the VE testified that if Claimant were limited to "occasional use for handling and fingering of the non-dominant upper extremity," it would eliminate the light exertion jobs identified, which the ALJ determined Claimant could perform (R. 23), and there would be no other jobs she could cite in their place. (R. 77). Accordingly, it is recommended the matter be remanded for further consideration of Claimant's testimony regarding the use of his left hand.

With respect to Claimant's testimony regarding the limiting effects of his back pain, gout, knee pain, PTSD, and headaches from high blood pressure, the ALJ explained that the medical evidence did not fully support Claimant's testimony. (R. 17–21). However, many of these conditions were also evaluated by the VA, and the resulting limitations contributed to a 90% disability rating, which the ALJ failed to appropriately consider and weigh. Because the VA decision arguably lends some support to Claimant's testimony regarding the limiting effects of his impairments and may impact the ALJ's credibility assessment, it is recommended that the ALJ reconsider, as necessary, this issue on remand.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-14] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-16] be DENIED, and the matter be remanded to the Commissioner for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **September 11, 2017** to

file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **seven (7) days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846–47 (4th Cir. 1985).**

SUBMITTED, this the 28th day of August 2017.

Robert B. Jones, Jr.
United States Magistrate Judge

18